**Timothy R. MURPHY, Appellant,**

v.

**DEPARTMENT OF the ARMY et al.**

**No. 78–1258.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 4, 1978.

Decided Dec. 21, 1979.

---

**32.** I join in the majority's disposition of the third order. *See* text and notes at notes 5–6 *supra*.

David C. Vladeck, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., and Diane B. Cohn, Washington, D. C., were on the brief, for appellant.

Noel Anketell Kramer, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Peter E. George and A. Patricia Froham, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before LEVENTHAL* and ROBINSON, Circuit Judges, and HAROLD H. GREENE**, United States District Judge for the District of Columbia.

Opinion for the Court filed by District Judge GREENE.

HAROLD H. GREENE, District Judge:

This is an appeal from a grant of summary judgment in favor of the government in an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The principal question presented is whether the deliberative process privilege encompassed in Exemption Five of the Act (5 U.S.C. § 552(b)(5)) was waived when the documents sought by appellant were disclosed to a Member of Congress.

I

Appellant is a staff member of the Kentucky Rivers Coalition, an organization concerned with the effects of dam construction in Kentucky. Some time prior to 1976, the Department of the Army and the Commonwealth of Kentucky agreed upon a cost-sharing plan for the joint development of water resources, including a dam, at Kehoe Lake, Kentucky, subject to the approval of the Secretary of the Army. Before that approval could be granted, an action was filed challenging the legality of a similar contract for another water resources development project in that state. *Gividen v. Corps of Engineers*, CA No. 76–0074L(A) (W.D.Ky. filed February 17, 1976). The issue in that litigation, as well as in subsequent proceedings pertinent to this case, was whether Kentucky was legally obligated to repay the federal government for its share of the costs of construction as required by 42 U.S.C. § 1962d–5a and 5b,[1] in view of a state constitutional provision prohibiting agreements binding upon future legislatures. When advised of the pending lawsuit, the Army Corps of Engineers and the Office of General Counsel of the Army concluded that it was necessary to secure confirmation of Kentucky's intention and authority to honor the cost-sharing provisions of the contract, and they contracted the state government to ascertain its views.

In a letter dated June 1, 1976, Governor Carroll of Kentucky expressed his intent to honor the cost-sharing provisions but he, too, acknowledged that unresolved constitutional questions were present. Notwithstanding that reservation, the Army author-

---

* Circuit Judge Leventhal participated in the consideration of this case but died before the decision and judgment were announced.

** Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. 42 U.S.C. § 1962d–5a provides: "(a) The Secretary of the Army, acting through the Chief of Engineers, may, when he determines it to be in the public interest, enter into agreements providing for reimbursement to States or political subdivisions thereof for work to be performed by such non-Federal public bodies at water resources development projects authorized for construction under the Secretary of the Army and the supervision of the Chief of Engineers. Such agreements may provide for reimbursement of installation costs incurred by such entities or an equivalent reduction in the contribu-

tions they would otherwise be required to make, or in appropriate cases, for a combination thereof. The amount of Federal reimbursement, including reductions in contributions, for a single project shall not exceed $1,000,000."

42 U.S.C. § 1962d–5b requires: "(a) After December 31, 1970, the construction of any water resources project by the Secretary of the Army, acting through the Chief of Engineers, or by a non-Federal interest where such interest will be reimbursed for such construction under the provisions of section 1962d–5a of this title or under any other provision of law, shall not be commenced until each non-Federal interest has entered into a written agreement with the Secretary of the Army to furnish its required cooperation for the project."

ities initially regarded the Governor's letter to be an adequate undertaking in compliance with federal law. However, when they became aware that a group of citizens might challenge the Kehoe Lake contract itself as illegal under Kentucky law, the Assistant Secretary of the Army for Civil Works asked the Army General Counsel, on August 2, 1976, for a review of the contract, advice on its legal adequacy, and recommendations on whether it should be approved. The General Counsel responded by a memorandum dated August 24, 1976, providing such advice and recommendations.

Shortly thereafter, the Assistant Secretary received a communication from Congressman Robert Jones, Chairman of the House Committee on Public Works and Transportation, who expressed the opinion that, in view of Governor Carroll's assurance, the contract was in compliance with federal requirements. Upon receipt of this letter, and after discussing the issue with Congressman Carl D. Perkins,[2] who represents the district in which the project was to be constructed, the Assistant Secretary decided to seek further advice from the General Counsel on the legal adequacy of the contract. The General Counsel's Office responded by a memorandum dated October 18, 1976, the document primarily in issue here.

Upon receipt of a communication from an attorney who again suggested the possibility of litigation, the Assistant Secretary wrote to Congressman Perkins notifying him that, in "an effort to bring the matter to a conclusion as expeditiously as possible," he intended to contact Governor Carroll once more.[3] He also advised Congressman Perkins that the Jones letter had been reviewed by the General Counsel's Office; that the October 18, 1979, memorandum had been prepared in response thereto; and that "the contract, as it now stands, does not legally obligate the Commonwealth of Kentucky to repay to the Federal Government its share of the costs. . . ." A copy of the October 18 memorandum was enclosed.

In December 1976, appellant filed an FOIA request with the Army seeking "all copies of written communication to [the Army Secretary's] subordinates in the Corps of Engineers . . . where the position the Secretary of the Army's position regarding the cost-sharing contract at the Kehoe Lake project is made" (sic), and another request, more specifically demanding documents relating to the legality of the cost-sharing provisions of the contract, was submitted a short time thereafter. In response, the Army provided appellant with twenty-one documents in full;[4] withheld minor portions of the two memoranda from the Assistant Secretary to the General Counsel;[5] and withheld all or almost all of the two reply memoranda prepared by the General Counsel's Office.[6]

---

2. According to a memorandum prepared by the Assistant Secretary, Congressman Perkins had previously been in communication with Chairman Jones, but the record does not reveal what other communications or contacts there may have been concerning this contract between the two congressmen or between them and the Army authorities.

3. In spite of that effort, no action has been taken on the project thus far. See note 9, *infra.*

4. Some of these documents were provided prior to the institution of litigation by appellant, and some thereafter.

5. Fifteen words were deleted from the first memorandum, and one sentence which summarized legal advice given to the Assistant Secretary from the second.

6. The August 24, 1976, memorandum was withheld in its entirety. It consists of two paragraphs, is approximately one-half page in length, and sets forth the advice and recommendations requested. The only portion of the October 18, 1976, memorandum released to appellant states that "On September 27, 1976, Congressman Robert Jones, Chairman of the *House Committee on Public Works and Transportation,* wrote to you stating that 'in view of [Governor Carroll's letter] it would seem . . . that the Commonwealth of Kentucky is in compliance with Section 221 of the Flood Control Act of 1970. . . .' Your office has inquired whether Congressman Jones' letter makes the contract 'enforceable' under Section 221."

The FOIA action filed in the District Court on September 15, 1977, sought the material withheld from these four documents. That court inspected the "key opinion" of October 18 *in camera* and determined that, inasmuch as a "final decision as to whether or not the dam will be constructed awaits the outcome of related litigation now in progress . . . [and] the documents are directly related to the formulation of policy not yet decided. . ., [the two memoranda prepared by the General Counsel] are protected and exempted from disclosure by the deliberative process privilege contained in . . . § 552(b)(5)." The court further held that the privilege was not waived by disclosure of the October 18 memorandum to Congressman Perkins.[7] This appeal followed.

## II

■ There is on this record no question but that the August 24 and the October 18, 1976, memoranda were protected from disclosure by Exemption Five of the FOIA. 5 U.S.C. § 552(b)(5) provides in pertinent part that:

> (b) This section does not apply to matters that are:
>
> \* \* \* \* \* \*
>
> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

In *Mead Data Central, Inc. v. U. S. Department of the Air Force*, 184 U.S.App.D.C. 350, 566 F.2d 242 (1977), this court considered in some detail Exemption Five as it encompasses what has been referred to as the deliberative process privilege. As we there stated (184 U.S.App.D.C. at 364, 566 F.2d at 256):

Congress adopted exemption five in recognition of the merits of arguments from the executive branch that the quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible. A decision that certain information falls within exemption five should therefore rest fundamentally on the conclusion that, unless protected from public disclosure, information of that type would not flow freely within the agency (footnotes omitted). ○

See also, *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Cong. & Admin.News 1966, p. 2418.

The exchange of memoranda between August 2 and October 18, 1976, represents a classic case of the deliberative process at work. The Assistant Secretary who had the decision-making power with respect to the Kehoe Lake project sought advice from the General Counsel of his department on the legal questions raised in Kentucky and the strategy to be pursued in view of the controversy surrounding the state's ability to enter into the agreement, and the General Counsel responded by the August 24 and October 18, 1976, memoranda. It may be that these memoranda could have been withheld in reliance on the attorney-client privilege, also encompassed in Exemption Five,[8] but unquestionably they qualify under the deliberative process exemption.[9]

---

7. The District Judge denied a motion for reconsideration which asserted that substantial factual issues existed on the question of whether disclosures other than the release of the one document to Congressman Perkins had occurred.

8. In order to rely on that aspect of Exemption Five, the government would have had to show that the General Counsel's communication was based on confidential information provided by

its "client," the Assistant Secretary. *Community Savings & Loan Assn. v. Federal Home Loan Bank Board*, 68 F.R.D. 378, 382 (E.D.Wis. 1975); *see also, Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D.Wash.1975).

9. Appellant argues that the withheld documents constitute a final agency decision, and that for this reason they are not protected by the exemption. *National Labor Relations Board v. Sears, Roebuck & Co., supra.* This

## III

■ This conclusion does not end our task. The critical document was furnished by the Army to Congressman Perkins, and appellant argues that this disclosure constitutes a waiver of the FOIA privilege. We do not find it necessary to explore fully to what extent and under what circumstances disclosure might affect the applicability of Exemption Five, under doctrines of waiver [10] or possibly other doctrines,[11] for it is evident that the disclosure to the Congressman could not have had that consequence.

Section 552(c) of title 5, U.S.Code, specifies that the exemption section of the Act "is not authority to withhold information from Congress." Appellant argues that this provision does not address the waiver question and is, in fact, irrelevant to it. We disagree.

Under appellant's construction, the special reservation of congressional access to executive information embodied in section 552(c) would be significantly undermined. First, the interpretation for which appellant contends—that disclosure of information to Congress is disclosure to the whole world— is inconsistent with the obvious purpose of the Congress to carve out for itself a special right of access to privileged information not

argument is based upon the erroneous premise that the Army's General Counsel's Office has authority to make final decisions with respect to legal matters. Although Army Regulation 10–5, par. 2–10 provides that the General Counsel has the duty of "determining the legal position of the Army on any legal question or legal procedure," there is nothing in that delegation of authority to suggest that his determinations are to be final decisions of the Department of the Army. Such decision-making power with respect to matters under Army jurisdiction rests with the Secretary and, insofar as public works and water resources projects are concerned, his authority has been delegated to the Assistant Secretary for Public Works. Army General Orders No. 20, dated October 18, 1976, par. 4. See *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 189, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).

Appellant also contends that the General Counsel's decision was the "final decision" in practice, as evidenced by the fact that following the issuance of his October 18 memorandum, work on the project stopped. Appellant's premise may well be factually incorrect for while the work has been halted, the Army has continued to negotiate with the Governor of Kentucky, and the Assistant Secretary has requested the General Counsel to conduct a further view of the contract. It is immaterial, however, how these factual disputes might be resolved for it is clear that legally the General Counsel has no authority to make a final determination with respect to the continuation of the project, and appellant does not contend that the General Counsel's Office has ever claimed that it has such authority. Indeed, the documents themselves make clear that only recommendations review, and legal advice were requested of and provided by the General Counsel. [Thus, the District Court's conclusion that the documents do not represent the final decision of the agency cannot be found to be clearly erroneous. F.R.Civ.P., Rule 52(a).]

10. *Mead Data Central, Inc. v. Department of the Air Force, supra*, 184 U.S.App.D.C. at 361, 566 F.2d at 253; *United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *In re Horowitz*, 482 F.2d 72, 81–82 (2d Cir. 1973); *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958), cert. denied, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958); see also *Matter of Fischel*, 557 F.2d 209 (9th Cir. 1977); *In the Matter of Victor*, 422 F.Supp. 475 (S.D. N.Y.1976); 8 Wigmore, Evidence § 2327 at 638 (McNaughton rev. 1961), McCormick, Evidence § 93 at 194–95 (2d ed. 1972).

11. *Carl Zeiss Stiftung v. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324, 325 (D.D.C.1966), aff'd sub nom. *V. E. B. Carl Zeiss, Jena v. Clark*, 128 U.S.App.D.C. 10, 384 F.2d 979, cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967); *United States v. Nixon*, 418 U.S. 683, 708 n.17, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Nixon v. Sirica*, 159 U.S.App.D.C. 58, 71, 487 F.2d 700, 712 (1973); *Freeman v. Seligson*, 132 U.S.App. D.C. 56, 69, 405 F.2d 1326, 1339 (1968); *Machin v. Zuckert*, 114 U.S.App.D.C. 335, 338, 316 F.2d 336, 339, cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963); *Boeing Airplane Co. v. Coggeshall*, 108 U.S.App.D.C. 106, 112, 280 F.2d 654, 660 (1960); *Cooper v. Department of Navy*, 558 F.2d 274, 278 (5th Cir. 1977); *Cooper v. Department of Navy*, 594 F.2d 484, 487–88 (5th Cir. 1979); *Gulf & Western Industries, Inc. v. United States*, 199 U.S. App.D.C. ——, 615 F.2d 527 (D.C.Cir. 1979); *Halkin v. Helms*, 194 U.S.App.D.C. 82, 598 F.2d 1 (D.C.Cir.1978); see also, H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966); S.Rep.No. 813, 89th Cong., 2d Sess. 9 (1965). *Mead Data Central, Inc. v. U. S. Department of the Air Force, supra*, indicates that a disclosure which would waive the attorney-client privilege does not necessarily impair the deliberative-process safeguard inherent in Exemption Five, and it thus does not foreclose the issue before us here.

shared by others. Second, appellant's proposed construction would effectively transform section 552(c) into a congressional declassification scheme, a result supported neither by the legislative history of the Act,[12] nor by general legal principles[13] or common sense. Third, since under such an interpretation every disclosure to Congress would be tantamount to a waiver of all privileges and exemptions,[14] executive agencies would inevitably become more cautious in furnishing sensitive information to the legislative branch—a development at odds with public policy which encourages broad congressional access to governmental information.

For these reasons, we conclude that, to the extent that Congress has reserved to itself in section 552(c) the right to receive information not available to the general public, and actually does receive such information pursuant to that section (whether in the form of documents or otherwise), no waiver occurs of the privileges and exemptions which are available to the executive branch under the FOIA with respect to the public at large.

Appellant argues in the alternative and more narrowly that section 552(c) should be construed to apply only to a release of information to the Congress as a body, and that when information is furnished to a legislative entity other than the entire Congress, such as a committee, or to a single Member of Congress, FOIA privileges attaching to such information must be deemed waived just as they would be if disclosure had been made to a private person.

This view of the statute is not consistent with the mode of operation of the Congress. Except when it finally and formally enacts legislation, the Congress rarely acts as a body. Its manifold duties in the legislative, investigative, and oversight fields are almost invariably carried out through committees, committee chairmen, individual members, and staff personnel.[15] Thus, a construction of section 552(c) which would relate it only to action of Congress as an

---

12. The House Report on the Freedom of Information Act explains that section 552(c) "restates the fact that a law controlling public access to Government information has absolutely no effect upon congressional access to information. Members of the Congress have all of the rights of access guaranteed to 'any person' by [the FOIA], and the Congress has additional rights of access to all Government information which it deems necessary to carry out its functions." H.R.Rep.No.1497, 89th Cong., 2d Sess. 11–12 (1966), U.S.Code Cong. & Admin.News 1966, p. 2429. The Senate Report indicates that section 552(c) refers only "to the public's right to know" and cannot "be backhandedly construed as authorizing the withholding of information from the Congress, the collective representative of the public." S.Rep. No.813, 89th Cong., 1st Sess. 10 (1965). In short, it is evident that in enacting the FOIA Congress intended to maintain its ready access to the information necessary for it to fulfill its legislative function but not at the same time to override by this method, directly or indirectly, all of the exemptions from general disclosure written into the Act.

13. There would be obvious problems, constitutional and otherwise, with such a construction with respect, for example, to national security information protected from disclosure under Exemption One of the FOIA. See *Developments in the Law, The National Security Inter-*

*est and Civil Liberties,* 85 Harv.L.Rev. 1130, 1208 (1972).

14. There would even be a risk that disclosure of a single document would call for full disclosure of all related matters. *United States v. Nobles, supra; see also Lee National Corp. v. Deramus,* 313 F.Supp. 224, 226–27 (D.Del. 1970).

15. Functions which require action by the entire body are generally so designated by the Congress itself in the legislative rules of procedure. For example, a House committee witness may not be held in contempt of Congress without the concurrence of the entire House of Representatives. *See Rules of the House of Representatives of the 95th Congress,* Rule IX (1977). House Rule IX lists several other matters which require action by the House itself, including protection of its constitutional prerogatives with respect to revenue legislation and appropriations, the title of its Members to their seats, admission to the floor of the House, the accuracy and propriety of reports in the Congressional Record, and the conduct of representatives of the press. Significantly, the Rule also involves the entire body in the protection of documents in the possession of the House from demands by the courts or publication by the press. *See also, Rules and Manual of the United States Senate,* Sec. 348–351 (1973).

entity would render the provision largely meaningless, and it is no doubt for that reason that it has previously been implicitly rejected by this court, at least with regard to the release of information to standing committees of the Congress. See *Aspin v. Department of Defense*, 160 U.S.App.D.C. 231, 491 F.2d 24 (1973), where the court upheld a ruling that a report on the My Lai incident in Viet Nam was privileged from disclosure under the FOIA even though it had previously been released to the Armed Services Committees of both Houses of Congress.[16] *See also*, K. Davis, *Administrative Law Treatise* § 3A.5 (1970 Supp.); *Safeway Stores, Inc. v. Federal Trade Commission*, 428 F.Supp. 346 (D.D.C.1977); *Kanter v. Internal Revenue Service*, 433 F.Supp. 812, 825 n.22 (N.D.Ill.1977); *Exxon Corp. v. Federal Trade Commission*, 384 F.Supp. 755 (D.D.C.1974).

Similarly, we find no basis in the statute or in public policy for distinguishing for FOIA purposes between a congressional committee and a single Member acting in an official capacity. The Senate and the House are so organized that certain legislative and quasi-legislative activities may be accomplished only through committee action. In other respects, however, the legislature acts through its individual Members. All Members have a constitutionally recognized status entitling them to share in general congressional powers and responsibilities, many of them requiring access to executive information. It would be an inappropriate intrusion into the legislative sphere for the courts to decide without congressional direction that, for example, only the chairman of a committee shall be regarded as the official voice of the Congress for purposes of receiving such information, as distinguished from its ranking minority

member, other committee members, or other members of the Congress. Each of them participates in the law-making process; each has a voice and a vote in that process; and each is entitled to request such information from the executive agencies as will enable him to carry out the responsibilities of a legislator.

The hierarchical construction proposed by appellant loses sight of the realities of the work of the Congress. The statute is more sensibly constructed to make congressional access to information, as well as the related question of whether such access, when achieved, constitutes a waiver of FOIA exemptions, dependent upon whether the particular executive-legislative communication is an official one: when a document is released for official congressional purposes, a waiver of an FOIA exemption is not implied, whoever in Congress may be the recipient of the information. On the other hand, when a Member of Congress receives executive documents or files in a purely private or personal capacity, the information may no longer be entitled to confidentiality.

Congressman Perkins received the memorandum which is the principal subject of this litigation in his official capacity. He is the Congressman in whose district the new facility was to be located. His constituents, the citizens who elected him to represent them in the national legislature, would surely be directly and substantially affected by the establishment of, or the failure to establish, this kind of public works project. As their elected representative, he possesses an official interest in the governmental actions and deliberations described in the documents here at issue.[17]

These conclusions are not inconsistent with the principle that, as a matter of pub-

---

**16.** Appellant argues that *Aspin* is distinguishable because of the reliance there on Exemption Seven of the FOIA (law enforcement activities) while here appellees are relying on Exemption Five. In the context of the waiver issue, that distinction is without significance. If release to a congressional body of a document exempt from disclosure under the FOIA does not amount to a waiver of the governmental privilege, it makes conceptually no difference whether the underlying exemption provision relates to law enforcement, to the government's internal deliberative processes, or to some other privileged activity.

**17.** There is no suggestion that Congressman Perkins had any private purpose, as distinguished from his responsibilities as a Member of Congress.

lic policy, the FOIA exemptions are to be narrowly construed, *Department of the Air Force v. Rose*, 425 U.S. 352, 360–62, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); indeed, they are sustained by that principle. This case does not involve the breadth of Exemption Five; the documents sought by appellant are plainly immune from disclosure under that exemption. What is at issue is the construction to be given to that provision of the law which safeguards congressional access to executive information notwithstanding the FOIA exemptions and the relationship of that provision to the question of when confidentiality is waived or destroyed by disclosure to a third party. The same policy considerations which favor a narrow construction of the exemptions—desirability of maximum access to government information and minimum secrecy—support a broad interpretation of the provision which safeguards unimpeded congressional access.

Since the congressional access authority under section 552(c) is, and perforce must be, coextensive with the non-waiver consequences flowing from disclosure pursuant thereto; it is hardly in the public interest to give a niggardly construction to that provision. Congress, whether as a body, through committees, or otherwise, must have the widest possible access to executive branch information if it is to perform its manifold responsibilities effectively. If one consequence of the facilitation of such access is that some information will be disclosed to congressional authorities but not to private persons, that is but an incidental consequence of the need for informed and effective lawmakers. As noted *supra*, the rule appellant contends for would tend to "dry up" the executive flow of information to the Congress since it would strip that infor-

mation of whatever privilege it might otherwise possess. Appellant's concern that such a disclosure policy may permit executive selectivity and favoritism may be left, as it has always been, to the political checks and balances. See *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).[18]

## IV

Appellant finally argues that, if exempt material is made available to a member of Congress, its confidentiality must be considered waived in the absence of an express understanding that the recipient was to maintain its confidentiality.

No specific request was made by the Army to Congressman Perkins that he keep the document confidential, nor did he represent to that Department that he would not disclose the contents of the document to third persons. On the contrary, on two different occasions the Congressman offered to provide the document to an environmental group opposing construction of the dam.[19] Appellant deduces from these facts that the information was not provided to Congressman Perkins on a confidential basis, and that any privilege that might otherwise attach to it was therefore dissipated. The Army's reply that "[t]he context of the disclosure to Congressman Perkins in his official capacity reflected the understanding that the document was provided solely for his information and was not to be disclosed to third persons," does not constitute a conclusive answer, for, depending on the circumstances, had Congressman Perkins actually disclosed the document to others outside the Congress the privilege might have been lost. But whatever the Congressman's public statements about the

18. Appellant argues that the Army was engaged in selective disclosure in this very case, in that the document was made available to Congressman Perkins but not to the other six Representatives whose districts might be directly or indirectly affected by the project, or to the two U.S. Senators from Kentucky. The record does not indicate how the project might affect the districts of other Representatives, if at all; beyond that, however, the fact is that Congressman Perkins had been in communication with the Chairman of the Committee on

Public Works on this issue, while, as far as this record shows, others had not. Thus, the selective disclosure issue may not be properly before this court. In any event, as indicated, its resolution is not relevant to the FOIA question. If executive departments to engage in selective disclosure, the problem is appropriately addressed through the political process, not by way of FOIA litigation.

19. The disclosure aborted when Congressman Perkins' staff could not find the document.

document and on the general issue of confidentiality, the fact is that he did not disclose the document or its contents to any third person.

At least initially, the test of confidentiality is an objective one, and if a document is in fact privileged or confidential, it is not divested of that quality merely because that status has not been expressly made known to the recipient. *See Charles River Park "A", Inc. v. Department of Housing and Urban Development,* 171 U.S.C.App.D.C. 286, 519 F.2d 935 (1975); *National Parks and Conservation Association v. Morton,* 162 U.S.App.D.C. 223, 498 F.2d 765 (1974); *Robles v. EPA,* 484 F.2d 843, 846 (4th Cir. 1973); and see, Judge McGowan's dissent in *Mead Data Central, supra,* 184 U.S.App. D.C. at 372, 566 F.2d at 264, who observed that a matter is confidential for purposes of Exemption Five when the originating party legitimately expects that the recipient will not disclose it.[20] It is only when there is an actual disclosure that such information may lose its privileged status.

The October 18 document was clearly within the ambit of the deliberative process exemption; as a memorandum reflecting legal advice within a government department an expectation of confidentiality may be assumed; and the document has not in fact been disclosed to the public.[21] In these circumstances the October 18 memorandum did not forfeit its confidential status notwithstanding that it was turned over to Congressman Perkins without an explicit warning or his unexecuted intentions with regard to its publication.

We hold that the withheld material was exempt from disclosure to appellant by virtue of 5 U.S.C. § 552(b)(5), and that it did not lose its exempt character as a consequence of its disclosure to a Member of Congress.[22] The judgment of the District Court is accordingly

*Affirmed.*

**20.** Documents falling within the attorney-client privilege are an exception to this rule. *Mead Data Central, Inc. v. Department of Air Force, supra,* 184 U.S.App.D.C. at 360–63, 566 F.2d at 252–55.

**21.** Appellant contends that others, in addition to Congressman Perkins, may have received the information, and that the District Court erred in not allowing him discovery on that issue. In response to appellant's first set of interrogatories, the Army stated that the only document described to persons outside the Department was the October 18 memorandum and that it was disclosed only to Congressman Perkins. This answer provided all the facts relevant to the privilege issue. To the extent that appellant's argument on this issue hinges upon an attempted distinction between a description of the document to others and a disclosure of its substance, it appears to be based upon the proposition that the Army may have announced publicly its position that Kentucky is not legally obligated to share the cost of the Kehoe Lake project. But disclosure of that conclusion, although it may be identical to that reached by the General Counsel, does not constitute a waiver of the exception with respect to the General Counsel's memorandum. *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).

**22.** In view of this conclusion, it is not necessary to explore appellant's contention that because the October 18, 1976, document lost its confidentiality, the government must be deemed to have waived its privilege with respect to the other communications relating to the same subject matter. 8 Wigmore, *supra*; McCormick, *supra.*