# General Accounting Office Request for Documents of the Federal Emergency Management Agency

The General Accounting Office Act of 1980 gives the General Accounting Office (GAO) new power to enforce its requests for information from executive branch agencies, but does not limit or expand GAO's underlying statutory authority to obtain such information.

In requesting documents of the Federal Emergency Management Agency (FEMA), GAO acts as an agent of the Congress and therefore has the benefit of the same protection against an executive agency's assertion of the Freedom of Information Act (FOIA) exemptions as does the Congress and its committees. Accordingly, FEMA may not assert FOIA exemption (b)(5) as a basis for declining to release documents to GAO.

The executive branch may, in appropriate circumstances, exercise its constitutional authority to decline to release information in order to safeguard the discharge of its functions.

September 10, 1980

## MEMORANDUM OPINION FOR
## THE COUNSEL TO THE PRESIDENT

This responds to the inquiry from your Office whether the General Accounting Office Act of 1980 (GAO Act) [1] provides a basis on which the Federal Emergency Management Agency (FEMA) [2] may decline to provide the General Accounting Office (GAO) certain documents it has requested. The GAO has requested access to FEMA's documents relating to that agency's recommendations to the President regarding emergencies and major disasters. Your Office explained that the requested documents include requests from Governors for declarations by the President of emergencies or major disasters. [3] Also, such files include analyses of the Governors' requests by FEMA's regional and national staff and officials, as well as transmittal memoranda to the President recommending whether to declare an emergency or major disaster. [4]

---

[1] Pub. L. No. 96–226, 94 Stat. 311.

[2] FEMA was created pursuant to Reorganization Plan No. 3 of 1978, 43 Fed. Reg. 41,943, to coordinate the exercise of powers previously dispersed among several agencies under which the federal government assists states in situations of "emergency" and "major disaster." *See also* Executive Order No. 12,127, 3 C.F.R. 376 (1980).

[3] *See* 42 U.S.C. § 5141; 44 C.F.R. Part 20.

[4] Your staff has confirmed that in a particular case in which FEMA makes a recommendation to the President, a covering memorandum will be prepared in the White House by the Domestic Policy Staff. We understand that the GAO has not requested these memoranda and that, in any event, they are not generally available in FEMA's files.

# I.

Your opinion request raises the general question whether the recently enacted GAO Act creates any new bases on which the executive branch would be authorized to deny the GAO's informational request. For the first time, that Act extended to the GAO authority to proceed to court to enforce its informational requests directed at executive agencies. It also limited the Comptroller General's power to proceed to court in certain circumstances. Among the checks on the Comptroller General's authority to go to court is one pertaining to records withholdable from a private requester under exemption (b)(5) of the Freedom of Information Act (FOIA),[5] the disclosure of which could reasonably be expected substantially to impair the operations of the federal government. In order for FEMA to avail itself of this exemption, the President or the Director of the Office of Management and Budget must certify in writing that these conditions have been satisfied, and such official must fully explain his action.[6] The legislative history makes plain that Congress intended such a certification procedure to be used sparingly, and only after a process of attempted accommodation by both branches of government had been allowed to run.[7]

Your Office's inquiry, which takes note of the foregoing exemption from the GAO's authority to proceed to court, asks whether it provides a basis on which FEMA would be authorized to decline the GAO's informational request. For the reasons that follow, we conclude that this provision of the GAO Act does not confer on FEMA—or on any other agency from which the GAO seeks information—an independent basis for refusing to provide information. It should be clearly understood, however, that the documents your staff has described to us might nonetheless be properly withheld from the GAO depending on the considerations that historically have governed the relationship between the GAO and the executive branch.[8]

A central concern underlying passage of the GAO Act was to give the Comptroller General authority to seek judicial resolution of disputes with executive departments regarding access to documents. Prior to the Act's passage, the GAO had little recourse when confronted with uncooperative executive branch agencies other than to report the dispute to the appropriate congressional committees. Supporters of the legislation claimed that on occasion this process has proved inadequate, and that if the GAO were to perform its responsibilities in a thorough

---

[5] 5 U.S.C. § 552(b)(5) pertains to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ."

[6] See § 102(d)(3) of the GAO Act.

[7] See S. Rep. No. 570, 96th Cong., 2d Sess. 8 (1980).

[8] These considerations, grounded in the constitutional relationship between the executive and legislative branches of government, are applied on a case-by-case basis. See note 13 infra.

and timely manner, it must have the authority to seek judicial assistance. *See* H.R. Rep. No. 425, 96th Cong., 1st Sess. 4-9 (1979).

Repeatedly during the hearings and debates on the bill, the point was made that its authors intended to broaden the GAO's enforcement powers while leaving untouched the underlying statutes providing authority for the GAO to conduct audits and investigations. Two passages in the report of the Senate Committee on Governmental Affairs make clear that the bill was not intended to limit or expand the GAO's basic authority to obtain information from executive agencies:

> It is important to recognize that *this legislation is not intended to alter in any way the current GAO right of access to records* to which GAO is entitled by statute. The legislation is neutral regarding any dispute concerning such right of access.[9]
>
> *         *         *         *         *
>
> Although *the Comptroller General's statutory right of access is not diminished by this legislation,* the President or the Director of the Office of Management and Budget may preclude his access to court once subsection (d)(3) is invoked.

S. Rep. No. 570, 96th Cong., 2d Sess. 8, 7 (1980) (emphasis added). As these passages confirm, the bill's extension to the GAO of power to go to court does not affect the GAO's otherwise-existing statutory rights of access to information from the executive branch. Thus, § 102 does not create any new basis for limiting those rights.[9] Similarly, § 102 does not expand the GAO's existing statutory rights of access to agency records.[10]

## II.

The further issue arises whether, putting aside the GAO Act, FEMA nonetheless may assert a right under the FOIA to decline to release to the GAO documents that would be withholdable from a private citizen under FOIA exemption (b)(5). The FOIA explicitly notes that its exemptions from disclosure of agency records provide no authority to withhold information from Congress. *See* 5 U.S.C. § 552(c). The FOIA's legislative history underscores that since the Act refers only to the public's right to know about governmental activity; its provisions,

---

[9] *See* 125 Cong. Rec. 4287 (1980) (where the floor sponsor, Senator Glenn, makes clear that the bill is designed to strengthen "GAO's existing authority to enforce its statutory right of access to records of Federal agencies . . . .").

[10] *See* H.R. Rep. No. 425, 96th Cong., 1st Sess. 6, 8 (1979); *General Accounting Office Act of 1979, Hearings before a Subcomm. of the House Comm. on Government Operations,* 96th Cong., 1st Sess. 1, 92 (1979) (Rep. Brooks); 125 Cong. Rec. 29,830 (1979) (Rep. Brooks). We note that another section of the GAO Act, § 101, does expand the GAO's access rights by granting the GAO authority to obtain certain agency records dealing with "unvouchered accounts." This provision is not at issue in your Office's inquiry.

including its exemptions, ". . . cannot . . . be backhandedly construed as authorizing the withholding of information from the Congress, the collective representative of the public." S. Rep. No. 813, 89th Cong., 1st Sess. 10 (1965); *see also* H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11–12 (1966).

Of course, Congress may and frequently does act through its agents, such as its committees or subcommittees. Just as the FOIA exemptions cannot be asserted against the Congress as a whole, they cannot be asserted against its agents; as the District of Columbia Circuit Court of Appeals has written: "a construction of section 552(c) which would relate it only to action of Congress as an entity would render the provision largely meaningless, and it is no doubt for that reason that it has previously been implicitly rejected by this court, at least with regard to the release of information to standing committees of the Congress." *Murphy* v. *Dept. of Army*, 613 F.2d 1151, 1156–57 (D.C. Cir. 1979). Accordingly, the question arises whether the GAO, in requesting FEMA's documents, acts as an agent of the Congress and therefore has the benefit of the same protection against an executive agency's assertion of the FOIA exemptions as does the Congress and its committees.

We have frequently noted that, when the GAO is acting pursuant to its statutory authority in investigating executive agencies on behalf of Congress, it acts as an agent of the Congress. The status of the GAO as an arm of the Congress has been traditionally recognized by Congress,[11] as well as by the GAO itself and other authorities.[12] Since the GAO conducts any lawful investigation in its role as an agent of Congress, it follows that an executive agency—including FEMA— would not be able to assert against the GAO any FOIA exemption that it could not make against Congress itself. FEMA, then, would not be able to assert FOIA exemption (b)(5) as a basis for declining to release documents to the GAO in this case.[13]

## III.

In sum, although § 102 of the GAO Act does grant the GAO a new authority to enforce its informational requests in court, it does not alter

---

[11] *See, e.g.,* 31 U.S.C. §§ 43, 53, 65(d); Reorganization Act of 1949, 63 Stat. 205; Reorganization Act of 1945, 59 Stat. 616.

[12] *See, e.g.,* 1980–81 *United States Government Manual* 55. *See also* W. Willoughby, *The Legal Status and Functions of the General Accounting Office of the National Government* 12–16 (1927); Corwin,. *Tenure of Office and the Removal Power,* 27 Colum. L. Rev. 354, 396 (1927).

[13] We are aware of no facts that would throw into question the GAO's statutory authority to conduct the present investigation of FEMA. Nor has any such question been raised by your Office. We note also that, although § 102 of the GAO Act and the FOIA provide no independent statutory bases on which FEMA may decline to release documents to the GAO, the congressional recognition in § 102(b)(3) of the GAO Act of an executive branch interest in protecting its deliberative processess reaffirms the importance of that constitutionally based interest. The executive branch may, in appropriate cases, exercise its constitutional authority to decline to release information in order to safeguard the discharge of its functions. *See generally Nixon* v. *Administrator of General Services,* 433 U.S. 425 (1977); *United States* v. *Nixon,* 418 U.S. 683 (1974).

the underlying duties and powers of the executive branch and the GAO respectively with regard to the GAO's statutory right of access to executive branch documents. Further, if the GAO Act operates in the way its proponents intended, the GAO's power to go to court will be invoked only as a last resort in the rare case in which the traditional accommodation between the two branches of government fail. We have no reason to believe, on the basis of the information your Office has supplied us, that this will be such a case.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
