John B. HOLMES, Jr., Harris County
District Attorney, Appellant,

v.

Dan MORALES, Attorney General of the
State of Texas; Randy Schaffer; Win-
fred H. Morgan; David Branam; Mark
Moore; Bridget Chapman; Joe Gorton;
Harold Lloyd; Lee Willie Maxie; and
Shirley Southerland, Appellees.

No. 03–94–00179–CV.

Court of Appeals of Texas,
Austin.

Aug. 16, 1995.

Rehearing Overruled Oct. 25, 1995.

William J. Delmore, III, Asst. Dist. Atty., Houston, for appellant.

Dan Morales, Atty. Gen., Diane Weidert Morris, Asst. Atty. Gen., Gen. Counsel Div., Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

John Holmes, district attorney in and for Harris County, sued Dan Morales, Attorney General of Texas, and others, for declaratory relief regarding certain of his decisions under the Texas Open Records Act. *See* Tex.Gov't Code Ann. §§ 552.001–.353 (West 1994 & Supp.1995) (the "Act"); *see also* Uniform Declaratory Judgment Act, Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (West 1986). Holmes appeals from the resulting declaratory judgment. We will affirm the judgment.

## THE CONTROVERSY

Holmes maintains, among other records, numerous "files" pertaining to individuals who have become involved with the criminal-justice system as suspects or ultimately as defendants in criminal cases. Holmes discontinues some files, for various reasons, without prosecution; others are prosecuted to a conclusion, including post-conviction review by direct and collateral attack. The parties refer to these as "closed files" as distinguished from the "active files" Holmes maintains for on-going investigations or prosecutions.[1]

Fourteen individuals requested information or records contained in as many of Holmes's "closed files." *See* Act § 552.221. Each file pertained to a different person. Holmes declined to release the information or records and asked the attorney general for a decision on whether the requested files were subject to compelled disclosure under the Act. *See id.* § 552.301. When the attorney general determined that all or a part of each file was subject to disclosure under the Act, Holmes sued for a declaratory judgment to the contrary, naming as defendants the attorney general and the fourteen individuals.[2] He based his action on both the Uni-

---

1. The Act makes no distinction between active and inactive files and Holmes's appellate contentions seem to apply alike to both.

2. The individuals are Randy Schaffer, Kim Weiner, Winfred H. Morgan, David Branam, Donovan J. Carey, Mark Moore, Don M. Barnett, Betty Ghio, Bridget Chapman, Joe Gorton, Harold Lloyd, Joel Chavez, Lee Willie Maxie, and Shirley Southerland. Weiner, Carey, Ghio, Gorton, Chavez, and Maxie did not appear and Holmes filed a non-suit, before trial, as to them and as to Barnett who had appeared.

The attorney general had ruled that the contents of the requested files were subject to disclosure with the exception of criminal-history information contained therein (Schaffer, Morgan, Chapman, Gorton, Lloyd); that the entire file was subject to disclosure (Branam, Moore); that the only document requested, an offense report, was subject to disclosure (Maxie); or that the documents Holmes furnished the attorney general were subject to disclosure save for three specified documents (Southerland).

form Declaratory Judgment Act and the special provision for declaratory relief set out in section 552.353(b)(3) of the Act. By taking non-suits, Holmes reduced the number of defendants to ten, including the attorney general.

Holmes moved for summary judgment on the five grounds discussed below. The attorney general also moved for summary judgment on grounds that generally averred the opposite of Holmes's five grounds. The trial court overruled Holmes's motion in its entirety and sustained the attorney general's motion to the following extent only, denying all other relief: (1) the office of district attorney of Harris County is a "governmental body" subject to the Act; (2) applying the Act to the office of district attorney does not violate the separation-of-powers principle of the Texas Constitution; and (3) Holmes must, in accordance with the attorney general's rulings, release the information requested by the nine individuals remaining in the lawsuit. On appeal, Holmes complains the trial court erred in overruling each of the five grounds upon which he requested summary judgment.

## DISCUSSION AND HOLDINGS

*Whether the Office of the District Attorney is a "Governmental Body" Subject to the Act.*

■ Information is "public information" subject to compelled disclosure under the Act, unless otherwise excepted, when the information is "collected, assembled, or maintained" by or for a "governmental body." Act § 552.021(a). In his first point of error, Holmes contends the trial court erred because the office of district attorney is not a "governmental body" within the meaning of the Act. The Act defines "governmental body" to include an "office that is within . . . the executive . . . branch of government and that is directed by one or more elected . . . members." Act § 552.003(a)(1). We believe the office of district attorney falls squarely within this statutory definition as an elective office within the executive branch of government, directed by a single elected "member."

The district attorney's principal duty is to "represent the State in all criminal cases in the district courts of his district and in appeals therefrom." Tex.Code Crim.Proc.Ann. art. 2.01 (1981).[3] The government's "investigation and prosecution of crimes is a quintessentially *executive* function." *Morrison v. Olson,* 487 U.S. 654, 706, 108 S.Ct. 2597, 2627, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting) (emphasis added); *see also Heckler v. Chaney,* 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985). Insofar as the district attorney's primary duty and function are concerned, the office fits easily and naturally within the definition of "governmental body" set out in section 552.003(a)(1) of the Act.

■ Holmes argues, however, that the office of district attorney is expressly excluded from the definition of "governmental body" by section 552.003(b) of the Act, which provides as follows: "In this chapter, 'governmental body' does not include the judiciary." The office of district attorney is an element of the state judiciary, according to Holmes, because the office is "created" in section 21 of Article V of the Texas constitution—an article establishing the "Judicial Department" of state government. Tex. Const. art. V, § 21 (1876, amended 1954). *See Meshell v. State,* 739 S.W.2d 246, 253 (Tex.Crim.App. 1987). We reject this theory.

We will discuss further, in connection with another point of error, the constitutional aspect of the office of district attorney. Suffice it now to say that we disagree with Holmes's silent premise that the word "judiciary," as used in section 552.003(b) of the Act, and the term "Judicial Department," at the head of Article V of the Texas Constitution, mean the same thing. They plainly do not.

■ The word "judiciary" carries the same meaning in both ordinary and legal usage: the branch of government in which the *judi-*

---

3. Certain more specific duties are assigned all prosecuting attorneys in Chapter 41 of the Government Code. *See* Tex.Gov't Code Ann. §§ 41.005–.009 (West 1988); *see also Meshell v. State,* 739 S.W.2d 246, 253 n. 9 (Tex.Crim.App.

1987) (acknowledging that district and county attorneys perform some executive duties even though constituted as part of the "Judicial Department").

*cial power* is vested—a system, therefore, of courts of law. *See Webster's Third New International Dictionary* 1223 (Philip B. Gove ed., 1986); *Black's Law Dictionary* 849 (6th ed. 1990). We find nothing that suggests the legislature intended the word "judiciary" to have any special meaning apart from its meaning in ordinary and legal usage. More to the point, the office of district attorney cannot be included in the meaning of "judiciary" because the state constitution invests no judicial power in that office even while placing the office in the "Judicial Department" of state government.[4] Instead, section 1 of Article V vests the state's entire judicial power in the courts named in that section, all of which are courts of law save the commissioners court. We cannot conclude, therefore, that the legislature intended to include the office of district attorney in the word "judiciary" when that body composed section 552.003(b) of the Act. We overrule Holmes's first point of error.

*Whether the Act Violates the Separation-of-Powers Principle.*

As a necessary predicate for the general system of checks and balances diffused throughout the state constitution, Article II, section 1 divides the powers of state government "into three distinct departments" and confines each "to a separate body of magistery, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another." Tex. Const. art. II, § 1. The section then directs that "no person, or collection of persons, being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." *Id.*

■ This statement of the separation-of-powers principle, in Article II, section 2, appears on its face to be rigid and absolute. The principle would collapse on itself, however, if given that construction because the legislature's power would ultimately consume the other two departments, given its power of the purse. *The Federalist* No. 48, at 323 (James Madison) (Robert B. Luce, Inc. ed., 1976). And such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular "department." *Government Servs. Ins. Underwriters v. Jones,* 368 S.W.2d 560, 562 (Tex.1963). Consequently, it has long been understood that the separation-of-powers principle means this: a public officer or body may not exercise or otherwise interfere with a power constitutionally assigned to another public officer or body, nor may either surrender its own constitutionally assigned power, referring in all cases to the "mass" of its powers or any "core" or paramount power. *Id.* at 564–65 n. 3. Some permissible degree of conflict and adjustment is subsumed in the separation-of-powers principle. "Co-ordination or co-operation of two or more branches or departments of government in solution of certain problems is both the usual and expected thing.... The system of checks and balances running throughout the governmental structure[,] while designed to prevent excesses, is not intended to make effective action impossible." *State Bd. of Ins. v. Betts,* 158 Tex. 83, 308 S.W.2d 846, 852 (1958). "The separation principle is not and cannot be rigid." 1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 98 (1977); *see generally* Harold H. Bruff, *Separation of Powers Under the Texas Constitution,* 68 Tex.L.Rev. 1337, 1348–56 (1990).

■ Holmes contends in his fifth point of error that the compelled-disclosure provisions of the Act cannot apply to a district attorney's investigation and prosecution files without violating the separation-of-powers principle, and the statute is consequently void if construed to have that effect. He argues that his "files" contain his work prod-

---

4. The "judicial power" is the power to *award legal remedies* that are traditional in courts of justice, in controversies between disputing parties who are properly before the court, based ordinarily upon past or present facts and according to rights, duties, and liabilities laid down in pre-existing rules of constitutional, statutory, or common law. The office of district attorney has no such power. The Judicial Department established in Article V includes other offices in aid of the judicial power—sheriff and constable, for example—in addition to district and county attorneys.

uct as an attorney and papers that reflect strategies, tactics, and other decisions he has taken in his prosecutorial discretion, all of which amount to "core" functions of the district attorney's office as he represents the state in criminal cases in district court and on appeal. We assume this is the case. Concerning the separation-of-powers principle, however, a *constitutional* problem arises only when one office or governmental body interferes with another "in a field *constitutionally* committed to [the latter's] control." *Betts*, 308 S.W.2d at 851–52 (emphasis added). May it be said that the Act purports to authorize the attorney general's interference with the office of district attorney in a field that the *constitution* has committed to the latter's control? It is not an easy question to answer.

It is quite evident that the office of district attorney has by *statutory* delegation the duty and power to represent the state in criminal cases in district court. Tex.Code Crim.Proc. Ann. art. 2.01 (West 1977). We must find that delegation in the constitution, however, before a separation-of-powers problem arises. Article V, section 21 of the constitution provides as follows:

> The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there *shall be* a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature.

Tex. Const. art. V, § 21 (emphasis added). On its face, this provision explicitly invests county attorneys with the power and duty to represent the state in all district-court cases, *assumes* the *existence* of district attorneys without assigning them any power or duty, and leaves to the legislature's regulation the respective duties and powers of county and district attorneys in those instances where a county is included in a district attorney's district. "This section has caused the courts a lot of trouble." Braden, *supra*, at 464. A definite construction has been placed on sec-

tion 21, however, and we believe it controls the matter so far as the present controversy is concerned. In *Garcia v. Laughlin,* 155 Tex. 261, 285 S.W.2d 191, 195 (1956), the supreme court declared as follows:

> [W]e believe the *Constitution* provides for either the district attorney or the county attorney, jointly or singly, in the event either fails to act, to be the proper officer to represent the State in the district court.

*Id.* (emphasis added). We understand this to mean that the office of district attorney derives directly from Article V, section 21 its power to represent the state, a constitutional power that the legislature may divide between the county and district attorneys in cases of overlap. It is not, then, a mere statutory power. Thus, Holmes may legitimately argue that the Act violates the separation-of-powers principle by purporting to authorize the attorney general to usurp Holmes's constitutionally given discretion to decide when, where, and what part of his "files" to make public as he carries out his duty to represent the state.

█ In Article IV, section 22, the constitution directs the attorney general to perform certain specified duties together with "such other duties as may be required by law." Tex. Const.Ann. art. IV, § 22. One duty "required by law" is that of administering sections 552.301–.307 of the Act. These sections require the attorney general to make a decision on application by governmental bodies when they believe requested information may not be public information. It appears implicit in those sections that the attorney general is expected to consider, in reaching a decision, the various exemptions and exclusions set out in the Act. A governmental body may decline to comply with the attorney general's decision and obtain judicial review of its correctness in a district court of Travis County by filing within a specified time "a petition for a declaratory judgment, a writ of mandamus, or both, against the attorney general ... seeking relief from the decision." Act § 552.353(b)(3).[5]

---

5. *See A & T Consultants, Inc. v. Sharp,* 38 Tex. Sup.Ct.J. 1072 n. 1 (July 21, 1995) (legislature recently amended Act so that "a governmental

body may bring suit against the attorney general in order to resist the disclosure of information

We do not believe the legislature's delegation of power to the attorney general, in the Act, has empowered that officer to frustrate the district attorney's constitutional power and duty to represent the State in criminal cases. Before the Act, a "citizen" possessed a common-law right to inspect public records. While the right was never absolute and inspection has always been subject to reasonable regulation and the custodian's discretion, the lawfulness of the custodian's decision to deny inspection was always subject to judicial review on application for writ of mandamus. *See generally Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978); *Hutchins v. Texas Rehabilitation Comm'n*, 544 S.W.2d 802, 804 (Tex.Civ. App.—Austin 1976, no writ); 76 C.J.S. *Records* §§ 62, 63 (1994); J.T.B., Jr., Annotation, *Enforceability by Mandamus of Right to Inspect Public Records*, 60 A.L.R. 1356 (1929). The right of inspection is now by virtue of the Act a statutory right, subject of course to the conditions, exclusions, and exceptions specified in the Act. Before the Act, the district attorney might in his discretion deny the inspection of any record in his custody. He may still do so after the Act. He might in his discretion now disregard the attorney general's *advisory* opinion that the requested information or record is lawfully subject to inspection. *See City of San Antonio v. Texas Attorney Gen.*, 851 S.W.2d 946, 950 (Tex.App.—Austin 1993, writ denied). And finally, he may have the issue judicially determined in a mandamus or declaratory judgment action in a Travis County district court.

Nothing of substance has changed with the Act. The district attorney still makes the initial determination of whether the law allows access to any records or information and the courts still make the final determination. The only new aspects are insubstantial—the district attorney's required preliminary resort to an advisory opinion of the attorney general, certain procedural consequences of that action, and an exclusive venue in Travis County. We cannot see how the Act has deprived the district attorney of any substantive discretion he possessed before the Act. We hold accordingly and overrule Holmes's fifth point of error.

*Whether Any Requested Information Is Excepted From Disclosure.*

 In points of error two, three, and four, Holmes contends his "closed files" are excepted from compelled disclosure under the provisions of sections 552.103, 552.108, and 552.001 of the Act. These sections exempt from compelled disclosure certain information relating to litigation, certain law-enforcement records and records held by prosecutors, and information expressly made confidential by law.

The trial-court judgment ordered disclosure of the nine contested files on terms previously designated by the attorney general in his advisory rulings. In his brief, Holmes does not complain of these terms. Rather, he contends his "closed files" are *categorically* exempt from compelled disclosure under the sections named above. It appears undisputed, however, that any particular file may contain records or information that are excepted from compelled disclosure along with other records or information that are not. In other words, the records and information are likely to be mixed in that regard and the confidentiality of any record or information within *a* file depends on the *facts* pertaining to each file. By their terms, moreover, the applicability of each of the three named sections of the Act requires a factual determination in each instance. The trial court was therefore correct in denying declaratory relief as to the applicability of sections 552.103, 552.108, and 552.001 beyond the nine files in question, as to which the facts were undisputed and no controversy is raised on appeal.

In the absence of an appellate controversy about the nine particular files, we overrule Holmes's second, third, and fourth points of error.

Finding no reversible error, we affirm the trial-court judgment.

that the attorney general has opined to be public information").