# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00250-CV

**Texas Commission on Environmental Quality, Appellant**

**v.**

**The Honorable Greg Abbott, Attorney General of Texas;
and the Honorable Eliot Shapleigh, Texas Senator, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-08-001855, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

In this appeal, the Texas Commission on Environmental Quality seeks reversal of the district court's judgment requiring the Commission to disclose certain confidential and privileged documents to Texas Senator Eliot Shapleigh. The issue presented is whether separation of powers limits the legislature's authority to obtain confidential and privileged communications between a state agency and its lawyers pursuant to section 552.008 of the Texas Public Information Act. *See* Tex. Gov't Code Ann. § 552.008 (West 2004). Because we conclude that section 552.008 requires disclosure of the documents at issue to Senator Shapleigh, we affirm the judgment.

## BACKGROUND

The facts of this cause are largely undisputed. In 2008, Senator Eliot Shapleigh intervened in an administrative proceeding before the Commission involving a request by

Asarco, Inc., to renew its air quality permit in order to reopen its copper smelting plant in El Paso,

Texas.  Shortly after the Commission issued a final order granting the permit application, Senator

Shapleigh made two separate requests[1] for documents from the Commission under the Texas Public

Information Act.[2]  *See* Tex. Gov't Code Ann. §§ 552.001-.353 (West 2004 & Supp. 2009).  In both

requests, Senator Shapleigh requested documents pursuant to "the legislative purpose special right

of access in Section 552.008 . . . ."

At the time of Senator Shapleigh's requests, section 552.008 provided:

(a)     This chapter does not grant authority to withhold information from individual
        members, agencies, or committees of the legislature to use for legislative
        purposes.

(b)     A governmental body on request by an individual member, agency, or
        committee of the legislature shall provide public information, including
        confidential information, to the requesting member, agency, or committee for
        inspection or duplication in accordance with this chapter if the requesting
        member, agency, or committee states that the public information is requested
        under this chapter for legislative purposes. A governmental body, by
        providing public information under this section that is confidential or
        otherwise excepted from required disclosure under law, does not waive or
        affect the confidentiality of the information for purposes of state or federal
        law or waive the right to assert exceptions to required disclosure of the
        information in the future. The governmental body may require the requesting
        individual member of the legislature, the requesting legislative agency or
        committee, or the members or employees of the requesting entity who will
        view or handle information that is received under this section and that is
        confidential under law to sign a confidentiality agreement that covers the
        information and requires that:

---

[1] Senator Shapleigh's first request was a letter to the Commission dated February 14, 2008.
His second request was a letter to the Commission dated February 18, 2008.

[2] Senator Shapleigh withdrew as a party to the administrative proceedings after the
Commission refused to disclose certain documents in response to his requests.

(1)     the information not be disclosed outside the requesting entity, or within the requesting entity for purposes other than the purpose for which it was received;

(2)     the information be labeled as confidential;

(3)     the information be kept securely; or

(4)     the number of copies made of the information or the notes taken from the information that implicate the confidential nature of the information be controlled, with all copies or notes that are not destroyed or returned to the governmental body remaining confidential and subject to the confidentiality agreement.

(c)     This section does not affect:

(1)     the right of an individual member, agency, or committee of the legislature to obtain information from a governmental body under other law, including under the rules of either house of the legislature;

(2)     the procedures under which the information is obtained under other law; or

(3)     the use that may be made of the information obtained under other law.[3]

The Commission made several documents available to Senator Shapleigh but declined to disclose certain documents that it deemed privileged attorney-client communications and attorney work product. *Id.* § 552.305 (West 2004). Included among the documents withheld by the Commission were documents prepared by the Commission's Office of General Counsel to advise

---

[3] Tex. Gov't Code Ann. § 552.008 (West 2004) (effective until September 1, 2010). The legislature enacted various amendments to section 552.008 in 2009; however, these amendments do not affect the outcome of this case. *See* Act of May 30, 2009, 81st Leg., R.S., ch. 1377, § 2, 2009 Tex. Gen. Laws 4326, 4326-27; Act of May 27, 2009, 81st Leg., R.S., ch. 1364, § 1, 2009 Tex. Gen. Laws 4304, 4304-05. For convenience, we cite to the current statute.

the Commissioners regarding the Asarco application. Also included were documents prepared by lawyers in the Environmental Law Division who advise the executive director of the Commission.

The Commission forwarded all of these documents to the Open Records Division of the Office of the Attorney General and requested a ruling under section 552.301 of the public information act.[4] *See id.* § 552.301 (West 2004). The Commission asserted that its documents were excepted from disclosure under sections 552.101 (confidential under other law), 552.103 (information related to litigation), 552.107 (attorney-client privilege), and 552.111 (agency memoranda and deliberative process privilege) of the act. *See* Tex. Gov't Code Ann. §§ 552.101, .103, .107, .111 (West 2004). In conjunction with its claim under section 552.101, the Commission also asserted that its documents were excepted from disclosure under Texas Rule of Evidence 503 and Texas Rule of Civil Procedure 192.5. *See id.* § 552.101; Tex. R. Evid. 503; Tex. R. Civ. P. 192.5. The Commission further claimed that disclosure of its documents to Senator Shapleigh would "disturb the effective separation of powers [under article II, section 1, of the Texas Constitution] because the legislative function would be in the position to interfere with the judicial and executive functions." *See* Tex. Const. art. II, § 1.

The attorney general issued an informal letter ruling, OR2008-06742, which interpreted the public information act to require disclosure of all documents held by the Commission's general counsel and Environmental Law Division to Senator Shapleigh. *See* Tex. Att'y Gen. OR2008-06742 (May 16, 2008). The attorney general declined to address the

---

[4] The Commission's general counsel forwarded documents held by the general counsel's office, and a lawyer in the Commission's Environmental Law Division forwarded documents held by that division to the attorney general's office.

4

Commission's assertions that its documents were confidential under Texas Rule of Evidence 503 or Texas Rule of Civil Procedure 192.5 in conjunction with section 552.101 of the act because the attorney general had previously "concluded that section 552.101 does not encompass discovery privileges." *See* OR2008-06742 at 1 n.1 (citing Tex. Att'y Gen. ORD Nos. 676 at 1-2 (2002), 575 at 2 (1990)). Finding that the Commission "failed to sufficiently demonstrate that such interference [wa]s present in the instant case," the attorney general rejected the Commission's claim that release of the subject documents would raise separation of powers concerns. *Id.* at 3. The attorney general concluded that the Commission's documents were subject to disclosure under section 552.008 of the public information act and, therefore, declined to address the Commission's remaining arguments. *Id.*

The Commission sued the attorney general in district court, and Senator Shapleigh intervened. *See* Tex. Gov't Code Ann. §§ 552.324(a), .325 (West 2004). Senator Shapleigh filed a motion for summary judgment. *See* Tex. R. Civ. P. 166a(c). The Commission also sought summary judgment, but the attorney general did not. The district court granted the senator's motion and denied the motion of the Commission. This appeal followed.

**ANALYSIS**

The Commission contends that the district court erred in concluding that section 552.008 of the public information act requires the Commission to disclose the documents at issue to Senator Shapleigh because the statute and Senator Shapleigh's requests violate the separation of powers doctrine embodied in article II, section 1, of the Texas Constitution. Senator Shapleigh and the attorney general respond that there was no error in the district court's judgment

5

because the Commission cannot show that the statute or Senator Shapleigh's requests amounted to undue interference with a core function constitutionally committed to the Commission.

***Standard of Review***

We review the district court's grant of summary judgment *de novo*.[5]  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).

Determining whether an exception applies under the public information act to support withholding of public information is a question of law, which we review *de novo*.  *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 323 (Tex. App.—Austin 2002, no pet.).  We construe the act liberally in favor of granting requests for information, while narrowly construing exceptions to disclosure.  *See* Tex. Gov't Code Ann. § 552.001(b) (West 2004); *City of Garland*, 22 S.W.3d at 365.

We consider questions of statutory construction *de novo* as well.  *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).  When construing a statute, our primary goal is to determine and give effect to the legislature's intent.  *Id.*  To determine legislative intent, we

---

[5] Because the attorney general did not seek summary judgment, our review is limited to whether the district court properly granted summary judgment in favor of Senator Shapleigh.  *See Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *see also Montgomery v. Blue Cross & Blue Shield of Tex., Inc.*, 923 S.W.2d 147, 152 (Tex. App.—Austin 1996, writ denied) ("Before an appellate court may reverse summary judgment for one party and render judgment for the other party, all parties must have sought final judgment relief in their cross-motions for summary judgment.").  Therefore, we do not consider whether the district court erred in denying summary judgment to the Commission.  *See Ackermann*, 403 S.W.2d at 365.

6

look to the statute as a whole, as opposed to isolated provisions. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We begin with the plain language of the statute at issue and apply its common meaning. *City of San Antonio*, 111 S.W.3d at 25. Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language unless that construction would lead to an absurd result. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999).

We construe Texas constitutional provisions in the same manner as we construe statutes. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001). The guiding rule is to discern and give effect to the intent of the provision's drafters. *Harris County Hosp. Dist.*, 283 S.W.3d at 842; *City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 298 (Tex. 1986). We rely heavily on the literal text of a constitutional provision to give effect to its plain language. *Harris County Hosp. Dist.*, 283 S.W.3d at 842; *Doody*, 49 S.W.3d at 344. If the plain language of a constitutional provision is clear and unambiguous, resort to extrinsic aids and rules of construction is inappropriate, and we give the language of the provision its common everyday meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). This rule provides an objective guidepost to discern the drafter's intent and ensures that ordinary citizens may "rely on the plain language . . . to mean what it says." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

### Legislative Access Under Section 552.008

We address as an initial matter the Commission's proposed construction of section 552.008. As part of its argument, the Commission asserts that we may interpret section 552.008 in

7

a manner that avoids the constitutional question of separation of powers. Specifically, the Commission contends that we may employ a heightened standard of interpretation to construe the phrase "including confidential information" in subsection 552.008(b) to exclude the documents at issue in this case—*i.e.*, documents protected by the attorney-client and work-product privileges.

As a general rule, we agree with the Commission that courts should construe statutes in a manner that renders them constitutional and gives effect to the legislature's intent. *See Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998); *see also Sweeney v. Jefferson*, 212 S.W.3d 556, 565 (Tex. App.—Austin 2006, no pet.) (courts should avoid deciding constitutional question when possible). However, the Commission provides no authority for its heightened statutory construction argument, and we have found none.

The starting point for construing a statute is the language of the statute itself. *In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001). The plain language of subsection 552.008(b) requires the Commission "on request by an individual member, agency, or committee of the legislature [to] provide public information, including confidential information," if the information is requested for legislative purposes. Tex. Gov't Code Ann. § 552.008(b). There is nothing ambiguous about the phrase "confidential information." *Id.* In the context of the attorney-client relationship, the state bar disciplinary rules define "confidential information" to encompass even unprivileged client information. Tex. Disciplinary R. Prof. Conduct 1.05(a) (eff. Jan. 1, 1990), *reprinted in* Texas Rules of Court: State 507 (West 2009) (State Bar Rules art. X, § 9). Applying this definition, the Texas Supreme Court has held, "[V]irtually any information relating to a case should be considered confidential." *See Phoenix Founders v. Marshall*, 887 S.W.2d 831, 834 (Tex.

8

1994).  The Texas Court of Criminal Appeals has also recognized, "'Confidential information' is, by definition, information that is available *only* to authorized persons; it is 'classified,' 'privileged,' 'private,' 'secret,' 'restricted.'"  *Landers v. State*, 256 S.W.3d 295, 309 (Tex. Crim. App. 2008) (quoting "Confidential," Roget's II:  The New Thesaurus (3rd ed. 1995)).  The plain meaning of this phrase includes documents subject to the attorney-client or work-product privileges.  Such documents would also constitute information that is "excepted from required disclosure" or "confidential under other law."  *See In re City of Georgetown*, 53 S.W.3d at 332 (holding that rules of civil procedure and evidence are "other law" for purposes of section 552.022 of public information act).

Adopted in 1973, the Texas Public Information Act is modeled on the federal Freedom of Information Act.  *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 323 (Tex. App.—Austin 2002, no pet.).  The language in section 552.008(a), which states "This chapter does not grant authority to withhold information from individual members, agencies, or committees of the legislature to use for legislative purposes," is strikingly similar to section 552(d) of the FOIA, formerly section 552(c), which states, "This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section.  *This section is not authority to withhold information from Congress*."  *See* 5 U.S.C. § 552(d) (emphasis added).  The Texas Supreme Court has explained that, when the legislature adopts a federal statute, Texas courts must presume that the legislature knew of the federal courts' construction of the federal statute and intended to adopt that construction.  *City of Garland*, 22 S.W.3d at 360 (citing *Blackmon*

9

*v. Hansen*, 169 S.W.2d 962, 964-65 (Tex. 1943)). We may therefore look to the federal courts' construction of the FOIA for guidance in interpreting the Texas act. *Id.*

When interpreting section 552(d), federal courts have consistently held that Congress reserved unto itself a special right of access to governmental information. *See, e.g.*, *Murphy v. Department of the Army*, 613 F.2d 1151, 1157 (D.C. Cir. 1979). These same federal courts have recognized that federal agencies may not use section 552(b)(5), or Exemption 5—including the attorney-client, work-product, and deliberative-process privileges—to withhold information from Congress, its committees, or its individual members, when requested in their official capacity for legislative use. *See id.* As the court of appeals explained in *Murphy*, when enacting the FOIA, Congress intended to maintain its ready access to information necessary for it to fulfill its legislative function but not to override, directly or indirectly, all of the exemptions from general disclosure written into the FOIA. *See id.* at 1156 n.12.

Applying the federal courts' interpretation of the FOIA to the language of section 552.008, it is clear that the Texas Legislature, like Congress, intended to maintain for itself a special right of access to confidential governmental information necessary to fulfill its legislative function without overriding the exemptions to required disclosure written into the Texas act. *See id.*; *see also Terrell v. King*, 14 S.W.2d 786, 790 (Tex. 1929) ("[C]onstitutional provisions which commit the legislative function to the two houses are intended to include [the power to investigate] to the end that the function may be effectively exercised."). Authority to pursue investigations and inquiries has long been regarded as an incident of full legislative power. *Terrell*, 14 S.W.2d at 789-90. We

10

therefore conclude that the phrase "confidential information" in section 552.008 is sufficient to include the documents at issue, and we reject the Commission's statutory construction argument.

We turn to the Commission's separation of powers claim.

### *Separation of Powers*

The Commission argues that section 552.008 and, by extension, Senator Shapleigh's requests violate the separation of powers because they invade the exclusive power of the Commission to carry out its constitutionally delegated functions under article XVI, section 59 of the Texas Constitution. Specifically, the Commission argues that section 552.008 causes a chilling effect on the authority constitutionally committed to the Commission to regulate in the area of natural resources. Thus, the Commission contends, section 552.008 and Senator Shapleigh's requests unduly interfere with the Commission's authority as derived from the Texas Constitution.

Article II, section 1 of the Texas Constitution, which governs separation of powers, states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1. This provision confirms the prohibition against one branch of government exercising a power inherently belonging to another branch. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001).

11

Although the language of this provision "appears on its face to be rigid and absolute[,] . . . such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular 'department.'" *Holmes v. Morales*, 906 S.W.2d 570, 573 (Tex. App.—Austin 1995), *rev'd in part on other grounds*, 924 S.W.2d 920 (Tex. 1996). When construing separation of powers under the federal Constitution, the United States Supreme Court "ha[s] never held that the Constitution requires that the three branches of Government 'operate with absolute independence,'" *see Morrison v. Olson*, 487 U.S. 654, 693-94 (1988) (quoting *United States v. Nixon*, 418 U.S. 683, 707 (1974)), choosing instead to adopt "Madison's flexible approach to separation of powers," *Mistretta v. United States*, 488 U.S. 361, 380 (1989), and "uph[o]ld statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment." *Id.* at 382. In the words of Justice Jackson:

> While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

Like their federal counterparts, Texas courts have long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle. *Id.*; *see Government Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560, 562 (Tex. 1963); *State Bd. of Ins. v. Betts*, 308 S.W.2d 846, 852 (Tex. 1958); 1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 98 (1977) ("The separation principle is not and

12

cannot be rigid."). Addressing the relationship between separateness and efficacy, the Texas Supreme Court stated:

> Co-ordination or co-operation of two or more branches or departments of government in the solution of certain problems is both the usual and expected thing. . . . The system of checks and balances running throughout the governmental structure[,] while designed to prevent excesses, is not intended to make effective action impossible.

*Betts*, 308 S.W.2d at 852.

While some degree of interdependence and reciprocity is permissible, Texas courts have consistently recognized that separation of powers may be violated in either of two ways:

> First, it is violated when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch. The provision is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.

*Jones v. State*, 803 S.W.2d 712, 715-16 (Tex. Crim. App. 1991) (quoting *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990)) (citations and emphases omitted). The Commission does not allege that the legislature, by enacting section 552.008, or Senator Shapleigh, by requesting information under the public information act, has assumed or exercised a power that is more "properly attached" to the executive branch of government. Rather the Commission argues that section 552.008 and the Senator's requests "unduly interfere" with the Commission's exercise of its constitutionally assigned powers.

To determine whether a separation of powers violation involving "undue interference" has occurred, we engage in a two-part inquiry. *See Armadillo Bail Bonds v. State*, 802 S.W.2d 237,

13

239 (Tex. Crim. App. 1990). We look first to the scope of the Commission's constitutionally assigned powers and, then, we consider the impact of the statute and the Senator's requests upon the Commission's exercise of those powers. *Id.* (appellate inquiry begins with nature of constitutional power and extent to which legislative encroachment is permitted).

*Constitutional Powers Assigned to the Commission*

The Commission asserts that it derives constitutional authority from article XVI, section 59, of the Texas Constitution. In relevant part, article XVI, section 59—also known as the Conservation Amendment—provides:

> (a)     The conservation and development of all of the natural resources of this State, and development of parks and recreational facilities, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; *and the Legislature shall pass all such laws as may be appropriate thereto.*

Tex. Const. art. XVI, § 59(a) (emphasis added). The plain language of this provision assigns the power to enact laws relating to conservation and development of natural resources not to the Commission, but to the legislature. Subsection (a) of this provision states " . . . and the Legislature shall pass all such laws as may be appropriate thereto." *Id.* Subsection (b) authorizes the creation of conservation and reclamation districts, and subsection (c) permits the legislature to authorize indebtedness and the levy and collection of taxes within such districts provided, however, that such

14

proposition be first submitted to and adopted by qualified voters of a district. *Id.* § 59(b)-(c). Nowhere in this provision does the constitution mention the Commission or otherwise delegate authority to the Commission. *Id.* § 59. Based on its plain language then, the Commission derives no constitutionally assigned power from article XVI, section 59, of the Texas Constitution.

To the extent the Commission claims to derive constitutional authority from article IV, section 10, we likewise reject that contention. Article IV, section 10 states:

> [The Governor] shall cause the laws to be faithfully executed and shall conduct, in person, or in such manner as shall be prescribed by law, all intercourse and business of the State with other States and with the United States.

Tex. Const. art. IV, § 10. Like article XVI, section 59, article IV, section 10, makes no mention of the Commission. *See id.* While the parties do not dispute that the Commission functions within the realm of the executive branch, we cannot conclude that such functioning brings the Commission within the scope of any constitutional authority granted by article IV, section 10. *See Holmes*, 906 S.W.2d at 572 (ascribing different meanings to the terms "judiciary" and "Judicial Department"). The plain language of article IV, section 10, does not grant any constitutional authority to the Commission.

Our conclusions that the Commission does not derive constitutional authority from either article XVI, section 59, or article IV, section 10, are further supported by the longstanding recognition that agencies are creatures of statute and have no inherent authority. *Public Util. Comm'n v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 406-07 (Tex. 1995). Although we recognize that the legislature may create an administrative agency, like the Commission, and delegate its legislative

15

powers thereto, such powers are derived from statute, not the Texas Constitution. *Id.*; *see also Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997); *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992). More importantly, an agency may exercise only those powers expressly delegated by statute and those powers necessarily implied to carry out the specific powers delegated. *Public Util. Comm'n*, 901 S.W.2d at 406-07; *McDaniel v. Texas Natural Res. Conservation Comm'n*, 982 S.W.2d 650, 651-52 (Tex. App.—Austin 1998, pet. denied); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137-39 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

In support of its separation of powers argument, the Commission relies on an informal letter ruling issued by the attorney general in response to a request for information by a Texas House Representative. *See* Tex. Att'y Gen. OR2008-02184 (Feb. 15, 2008). The representative requested public information from the attorney general himself pursuant to section 552.008. The attorney general argued that specific documents responsive to the request were exempt from disclosure because they were privileged attorney-client communications and disclosure would infringe upon the attorney general's constitutional authority to render advisory opinions in violation of the separation of powers doctrine. In his letter ruling, the attorney general explained that article IV, section 22 of the Texas Constitution confers exclusive authority to issue advisory opinions on the attorney general and no constitutional provision conferred such power on the legislature. *See id.* at 2-3. The attorney general concluded that allowing legislative access to the attorney general's internal deliberations would unduly interfere with the effective exercise of his constitutional power to render a written advisory opinion. *See id.* at 3.

16

The Commission's reliance on this letter ruling is misplaced. Unlike the attorney general, the Commission derives no specific power from the Texas Constitution. In the absence of constitutional authority assigned to the Commission, there can be no separation of powers violation occasioned by the legislature's enactment of section 552.008 or the Senator's requests for information under that statute. *See Holmes*, 906 S.W.2d at 574 ("It is quite evident that the office of district attorney has by *statutory* delegation the duty and power to represent the state in criminal cases in district court. We must find that delegation in the constitution, however, before a separation-of-powers problem arises." (citation omitted)). Because we find no constitutional authority committed to the Commission and, therefore, no separation of powers violation, we can affirm the district court's judgment on this ground alone without considering the second prong of the inquiry.

*Permissible Legislative Encroachment*

Nevertheless, even if we agreed with the Commission that it derives authority to issue air quality permits from the Constitution, to reverse the district court's judgment we would still have to find that the legislature's enactment of section 552.008 unduly interferes with the Commission's exercise of constitutional authority.

"The power and authority of a state legislature is plenary and its extent is limited only by the express or implied restrictions thereon contained in or necessarily arising from the Constitution itself." *Government Servs. Ins. Underwriters*, 368 S.W.2d at 563. When the legislature enacts a statute, it exercises a power "properly attached" to the legislative branch of government. *Jones*, 803 S.W.2d at 716. A constitutional problem arises, however, when legislative enactment

17

interferes with the core functioning of another branch of government in a field constitutionally committed to the control of that branch. *Id.*; *see also Armadillo Bail Bonds*, 802 S.W.2d at 239 (legislature may not interfere in core judicial functions). Stated differently, the legislature may not interfere with the core functions of the judicial or executive branches without running afoul of separation of powers.

In support of its claim that section 552.008 unduly interferes with its permit granting authority, the Commission argues that release of its confidential documents to Senator Shapleigh would have a "chilling effect" on the free flow of ideas, frank communications, and the exchange of advice from the Commission's attorneys and the Commission.[6] But, the Commission cites no authority, and we have found none, for the proposition that some unspecified chilling effect alone would constitute sufficient undue interference to create a separation of powers violation.

We further observe that subsection 552.008(b) protects the confidentiality of the Commission's documents once they are disclosed pursuant to a legislative request for information. *See* Tex. Gov't Code Ann. § 552.008(b). Subsection 552.008(b) preserves the confidentiality of the Commission's documents while in the possession of Senator Shapleigh by authorizing the Commission to require Senator Shapleigh to sign a confidentiality agreement prior to receiving the documents at issue. *See id.* In addition, subsection 552.008(b) expressly states that disclosure to

---

[6] In support of this argument, the Commission relies on conclusory affidavits from two of the Commission's attorneys. In each affidavit, the affiant states a personal opinion that disclosure would have a chilling effect on the attorney-client relationship or would inhibit the ability of agency attorneys to provide legal advice. But neither affiant explains how disclosure of the subject documents to a legislator would restrict the communication of legal advice between Commission administrators and their counsel.

Senator Shapleigh does not waive or otherwise affect the confidentiality of the documents for purposes of state or federal law, nor does disclosure to Senator Shapleigh under section 552.008 prevent the Commission from asserting exceptions to required disclosure in response to future requests for these documents.[7] *See id.* These protections make clear that the legislature intended to give its members and committees a right of access even to confidential information. Accordingly, even were we to accept the Commission's argument regarding its constitutional authority, we conclude the Commission has failed to demonstrate how disclosure of the documents at issue to Senator Shapleigh unduly interferes with the Commission's exercise of that authority. We overrule the Commission's separation of powers claim.

## CONCLUSION

Because we conclude that section 552.008 requires disclosure of the documents at issue and the Commission has failed to demonstrate that such disclosure would unduly interfere with any constitutional authority committed to the Commission, we affirm the district court's judgment.

---

[7] In response to two other requests for these same documents, we observe that the attorney general agreed with the Commission that the documents at issue were exempt from disclosure under section 552.107 of the public information act. *See* Tex. Att'y Gen. OR2008-10112 (July 25, 2008), OR2008-06741 (May 16, 2008).

19

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   April 13, 2010